**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Robert P. KELLY, Defendant-Appellee.**

**No. 75–1121.**

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1975.

Decided June 11, 1975.

Rehearing and Rehearing En Banc Denied July 2, 1975.

Certiorari Denied Nov. 3, 1975. See 96 S.Ct. 272.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellant.

John S. Connolly, St. Paul, Minn., for appellee.

Before GIBSON, Chief Judge, and HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

Robert P. Kelly was indicted for violation of 18 U.S.C. App. § 1202(a)(1), which prohibits possession of a firearm by one who has previously been convicted of a felony. The District Court dismissed the indictment, holding that Kelly was not a convicted felon within the meaning of the statute. We reverse.

The parties stipulated that Kelly had been convicted in Minnesota state court in 1970 of the crime of simple robbery, that he had served time in a reformatory pursuant to that conviction, and that, upon his release in August, 1973, he was granted a restoration of civil rights by the Minnesota Department of Corrections Youth Conservation Commission pursuant to Minn.Stat.Ann. § 242.31.[1]

They further stipulated, in effect, that all elements of § 1202(a)(1) had been met, with the exception of the disputed convicted felon issue. The District Court held that the restoration of civil rights pursuant to Minn.Stat.Ann. § 242.31 obliterated Kelly's felony conviction for purposes of § 1202(a)(1). We cannot agree.

Congress has expressly exempted from the operation of § 1202(a)(1)

\* \* \* any person who has been pardoned by the President of the United States or the chief executive of a State and has expressly been authorized by the President or such chief executive, as the case may be, to receive, possess, or transport in commerce a firearm.

18 U.S.C. App. § 1203(2).[2]

As was true in *United States v. Mostad,* 485 F.2d 199, 200 (8th Cir. 1973), *cert. denied,* 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974), "[t]he defendant is not such a person."[3] He was neither

---

**1.** Section 242.31 provides:

Whenever a person committed to the authority upon conviction of a crime is discharged from its control other than by expiration of the maximum term of commitment as provided in chapter 242, or by termination of its control under the provisions of section 242.27, such discharge shall, when so ordered by the authority, restore such person to all civil rights and shall have the effect of setting aside the conviction and nullifying the same and of purging such person thereof. The authority shall file a copy of the order with the district court of the county in which the conviction occurred, whereupon the court shall order the conviction set aside.

Whenever a person has been placed on probation by the court pursuant to section 242.13 and, after satisfactory fulfillment thereof, is discharged therefrom, the court, on application of the defendant or on its own motion and after notice to the county attorney, in its discretion may likewise so order.

Such orders restore the defendant to his civil rights and purge and free him from all penalties and disabilities arising from such conviction and it shall not thereafter be used against him, except in a criminal prosecution

for a subsequent offense if otherwise admissible therein.

**2.** A felon may apply to the Secretary of the Treasury to have his federal disability removed under 18 U.S.C. § 925(c). But § 1203 contains the only provisions for exemption stemming from the actions of state, as opposed to federal, authorities. Kelly did not apply for relief under § 925(c).

**3.** The defendant in *Mostad* had had his civil rights restored pursuant to Minn.Stat.Ann. § 609.165, which provides in relevant part:

Subdivision 1. When a person has been deprived of his civil rights by reason of conviction of a crime and is thereafter discharged, such discharge shall restore him to all his civil rights and to full citizenship, with full right to vote and hold office, the same as if such conviction had not taken place, and the order of discharge shall so provide.

Subd. 2. The discharge may be:

(1) By order of the court following stay of sentence or stay of execution of sentence; or

(2) By order of the Minnesota corrections authority prior to expiration of sentence; or

(3) Upon expiration of sentence.

pardoned by the Governor nor expressly authorized to possess a firearm. Instead,

> \* \* \* [h]e belongs to a general class of convicted felons whose civil rights have been restored *by a statute* that is silent with respect to the right of such persons to possess firearms. \* \* \*

*Id.* (Emphasis supplied.).

 By specifically providing that it would recognize only certain pardons, Congress indicated that it did not wish to recognize other means which the states might employ to expunge felony convictions or to restore civil rights. Thus, Congress permitted the arming of those ex-offenders who had been individually considered and approved by a chief executive, but chose not to permit the arming of ex-offenders who receive automatic treatment under general rehabilitation statutes. We have previously held that this classification is a reasonable one, *United States v. Mostad, supra* at 201, and we adhere to that ruling.

 Kelly's assertion that the principle of federal-state comity requires recognition of the Minnesota "statutory pardon" is without merit.

---

Although the statute involved in *Mostad*, unlike the statute involved here, did not speak of "purging" and "nullifying" the conviction, the distinction is not a relevant one for purposes of § 1202(a)(1). Neither state rehabilitative program comes within the purview of § 1203(2), and the reasoning in *Mostad* is equally applicable here. In *United States v. Glasgow*, 478 F.2d 850 (8th Cir.), *cert. denied*, 414 U.S. 845, 92 S.Ct. 96, 30 L.Ed.2d 95 (1973), the defendant had pleaded guilty to a felony, yet was classified under state law as a gross misdemeanant due to his light sentence. We held that he was still a convicted felon for purposes of § 1202(a)(1).

**4.** From the stipulation presented to the District Court and the briefs on appeal, it appears that Kelly chose to rest his case on the technical argument that he was not in fact a convicted felon. He did not argue that he was misled by the state.

**5.** In this instance, the letter which was sent to Kelly by the Department of Corrections in

\* \* \* Neither the inherent nature of a pardon nor full faith and credit require that a state pardon automatically relieve federal disabilities.

*Thrall v. Wolfe*, 503 F.2d 313, 316 (7th Cir. 1974), *cert. denied*, 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975).

The state has no superior interest in arming its citizens.

Although he does not properly present the issue,[4] we are concerned about the danger that state authorities may affirmatively mislead an ex-offender into believing that his right to carry a firearm under federal law has been restored by state action.[5] During oral argument in the *Mostad* case, we asked counsel for the State of Minnesota to take steps to insure that ex-offenders rehabilitated under Minn.Stat.Ann. § 609.165 would be affirmatively warned that their federal disabilities concerning firearms had not been removed. Apparently this was done. It is important that the state also assure that this is done in the future with respect to § 242.31 and any other statute providing for the restoration of civil rights.

Reversed.

---

September of 1973 congratulated him on the nullification of his conviction and declared that the state's action

> \* \* \* has the same effect as a pardon in that it generally relieves you of the legal disabilities you incur by your conviction. A copy of this discharge has been filed with \* \* \* the Federal Bureau of Investigation. \* \* \*

It is true that,

> \* \* \* [u]nder § 1202(a)(1), the government need not prove specific intent to violate the law or knowledge on the part of the defendant that he is violating the law. \* \* \*

*United States v. Mostad*, 485 F.2d 199, 200 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974).

Nevertheless, there is a disquieting measure of unfairness when a state agency misleads an ex-offender into believing that he is exempt from a federal law. This unfairness should be corrected.